William J. Morgan and Antonia B. Morgan v. Commissioner.
Morgan v. Commissioner
Docket No. 92448.
United States Tax Court
T.C. Memo 1962-282; 1962 Tax Ct. Memo LEXIS 28; 21 T.C.M. (CCH) 1489; T.C.M. (RIA) 62282; November 28, 1962
William J. Morgan and Antonia B. Morgan, pro se, Dunn Loring Rd., Merrifield, Va. W. Dean Short, Esq., for the respondent. KERN
mined deficiencies in petitioners' income tax for the years and in the amounts as follows: Year
Deficiency
1957
$4,911.87
1958
3,231.31
1959
2,368.67
The issues presented for our decision are whether the petitioners are entitled to treat certain sums received from their employer as back pay, whether petitioners are entitled to capital gain treatment for amounts received from their employer as compensation, whether petitioners are entitled to depreciation deductions on their residence partially used for business purposes in greater amounts than allowed by respondent, and whether petitioners are entitled to various deductions disallowed by respondent as personal or capital expenditures. Some of the determinations made by the respondent in his notice of deficiency have not been assigned as errors in the petition or have *30 been conceded by petitioners. These are: A disallowance of a deduction in the amount of $600 for the year 1958 for the rental value of petitioners' residence used for business purposes; the determination that a Christmas bonus received by petitioner Antonia B. Morgan from her employer in the amount of $1,800 in the year 1959 constituted ordinary income and not long-term capital gain as reported on petitioners' return; and the disallowance of deductions in the amounts of $118 and $148 for the years 1958 and 1959, respectively, for gasoline taxes deducted twice on petitioners' returns, and for Federal amusement taxes, corporate taxes, and hunting licenses. Findings of Fact Petitioners are husband and wife residing in Merrifield, Virginia. They filed joint individual income tax returns for the years 1957, 1958, and 1959 with the district director of internal revenue at Richmond, Virginia. Petitioners describe their occupations on their returns as psychologists. Petitioners received a total of $15,500 in 1957 from their employer, Aptitude Associates, Incorporated, for services rendered in the years 1954 and 1955. The sum of $15,500 exceeds 15 percent of petitioners' gross income *31 for the year 1957. The employer did not pay the salaries to petitioners in the years in which they were earned for lack of funds and inability to borrow money. There is no evidence of record from which we may conclude that petitioners were not paid their salaries in the years 1954 and 1955 because the employer underwent bankruptcy, receivership, or an event similar in nature. The Commissioner determined that the $15,500 was includible in petitioners' gross income in the year 1957. Petitioners consulted with several internal revenue agents on the question of treating the sum of $15,500 as "back pay," and subsequently they filed with the Commissioner informal claims for refund for the years 1954 and 1955. Such claims were based on overpayments of income tax resulting from the application of the salaries and withholding tax paid in 1957 to the years 1954 and 1955. The following paragraphs appear in the petition in this case: 4. The determination of tax set forth in the said notice of deficiency is based upon the following errors: * * *
c. Salaries claimed as retroactive have been disallowed, see Facts (c) and (d). In the light of these facts, it is requested that our original *32 claim of April 8, 1958 be allowed, and that monies due us be refunded. * * *
5. The facts upon which the petitioner relies as the basis of this case are as follows: * * *
c. This matter has been previously discussed with Miss T. R. Miller, Internal Revenue Agent, and she stated that the ruling in favor of retroactive pay allowances was a matter of how the law was read. Copies of letters to Miss Miller, dated November 3, 1958 and December 31, 1958 are included as Appendices D and E. After our first meeting in 1960 Internal Revenue Agent Feagan phoned to say that the retroactive provision would hold with our return. d. Our report to the Internal Revenue Service on April 8, 1958 requesting an adjustment of taxes on a retroactive basis is attached as Appendix F. This report requests that the overpayment for 1954, $381.18, be made payable to us. We have not yet received that money and our claim continues. The adjustment for 1955 amounted to $296.28 in our favor. It should be noted that in 1957 we sent checks for $810.00 and $1,035.00 as withholding taxes for compensations provided to us by Aptitude Associates, Incorporated, amounting to $7,500.00, and at that same year *33 we paid taxes of $575.00 and $1,265.00 for monies paid by Aptitude Associates, Incorporated, a total of $8,000.00. With these additions our total taxes for 1954 and 1955 amounted to $5,735.29, of which we were claiming a refund of $677.46. e. The provision for retroactive salary was decided upon by the board. Without it, Aptitude Associates would not have been able to function. Salaries had to be deferred in order to guarantee that the organization could continue with funds. There was no way in which monies could be borrowed since no credit was available to us. Petitioners' returns for the years 1954 and 1955, or evidence of the contents thereof, have not been introduced into evidence. Petitioners have failed to introduce any evidence to prove that the amounts received in 1957 for services rendered in 1954 and 1955 qualify to be treated as back pay under the provisions of section 1303(a) of the Internal Revenue Code of 1954 because the part of the tax attributable to the back pay received and included in gross income in 1957 was greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions *34 of such back pay in gross income for the taxable years to which such portions are respectively attributable. In their 1958 return petitioners reported as long-term capital gain the receipt from Aptitude Associates, Incorporated, $10,000 in cash and the value of an automobile. Pursuant to a resolution of the board of directors of Aptitude Associates, Incorporated, these assets were turned over to petitioners in lieu of salaries still owing to them. The respondent determined that the value of the automobile was $400 and included such value and the $10,000 cash in gross income at ordinary income rates as compensation for services rendered. Petitioners valued the automobile at the time of receipt to be $300 but offered no evidence at trial to sustain their position. There is no evidence of record to prove that respondent erred in his determinations with respect to this matter. Petitioners' return for 1958 reported a net profit from business in the amount of $14,207. The respondent determined that the reported net profit from business was understated by the amount of $1,541.48. No evidence was introduced by petitioners to controvert this determination. On their returns for the years *35 1958 and 1959 petitioners claimed deductions for depreciation on their brick residence used in part for business purposes. They claimed a basis of $30,000 in the house and a 20-year life for depreciation purposes. In the petition it is requested that "depreciation be established at $35,000.00 which would be the minimum replacement value for this place." On brief, petitioners contend that the "value of the house is $40,000, and depreciation should be based on that figure." The cost to petitioners of the house and lot on which it is situated was $18,750. The Commissioner decreased the depreciation deductions claimed on the returns upon a finding that the cost of the house and lot was $18,750 of which $2,750 was allocable to land. Ten percent of the cost of the building, or $1,600, was allocated to personal use. The Commissioner also determined that the basis of the building in the amount of $14,400 should be depreciated over a 40-year period. Prior to 1957 petitioners improved the house by reinforcing the support of a back porch, varnishing floors, installing an additional bathroom, electrical fixtures, storm windows and doors, a furnace, staircases, pine paneling in the basement and *36 one upstairs room, and a driveway and parking lot. A garage was converted to a storeroom with shelves and city water and sewer connections were made. There is no evidence of record of the cost of such improvements, or when they were begun or completed. On the basis of the record before us we are unable to estimate the cost of such improvements. Petitioners have failed to prove error in the Commissioner's determinations that the cost to petitioners of the house and land was $18,750, that $2,750 of such cost should be allocated to land, that 10 percent of the cost of the building should be allocated to personal use, and that the basis of the building should be depreciated over a 40-year period. The Commissioner determined that the petitioners' return for the year 1959 overstated business expense deductions in the total amount of $4,789.55 due to an error in addition, and unauthorized claimed deductions for personal living expenses, house payments, half the cost of a washing machine, and the purchase price of a file cabinet, an office chair, and two refrigerators. The Commissioner treated the purchase of the file cabinet and office chair as capital expenditures and allowed depreciation *37 on these items based on a total cost of $261.25 and a 5-year life. In the petition the claimed deductions discussed in this paragraph are raised as follows: We do, however, question profit from business amounting to $4,789.55 and the depreciation of $1,105.17. In regard to Explanation of Adjustments (b) we should like to say that we do not find any error in addition as claimed to the sum of $1,500. We do not understand why the house payments of $1,310.00 have been disallowed, nor why a washing machine, only one half of which has been claimed for business, has been disallowed since this is used in connection with our work. The file cabinet in the office of $159.00 is used exclusively for business work as are also the office chair of $102.25 and the two refrigerators of $1,299.95, see Facts (i) and (j). We therefore request that we receive an explanation as to why the deductions for house payments, washing machine, file cabinet, office chair and two refrigerators have been disallowed. The only evidence of record on this matter is testimony by Morgan which follows: Now, we need also the washing machine for our work. We need the file cabinet. We need refrigerators because we have *38 to keep food on hand. And I have not noticed that these allowances have been made under any depreciation category. Although petitioners claim that the washing machine and the two refrigerators are needed in their business, and that they ought to be allowed depreciation deductions for these items, if not deductions for the purchase prices, the record does not contain evidence of the purpose or the extent to which the washing machine and the two refrigerators were used in petitioners' trade or business. Nor have petitioners supported their plea at trial for depreciation deductions on these items by evidence of their useful lives and salvage values. At trial petitioners questioned for the first time the disallowance of deductions claimed in 1957 for books and travel expenses. No evidence was offered, however, in support of the allowance of such deductions. Opinion KERN, Judge: The issues presented for our decision are: (1) With respect to the year 1957, (a) whether respondent correctly included in petitioners' gross income compensation which was received in 1957, and (b) whether respondent correctly determined the medical expense deduction which is dependent upon a finding of *39 the aforementioned issue in favor of the respondent; (2) with respect to the year 1958, (a) whether respondent correctly determined that cash and the value of an automobile received by petitioners from their employer were includible in petitioners' return at ordinary income rates and not as long-term capital gain as reported, (b) whether petitioners understated their net profit from business, and (c) whether the Commissioner correctly determined the amount of the depreciation deduction for petitioners' residence used for business purposes; and (3) with respect to the year 1959, (a) whether the Commissioner correctly disallowed as deductions an overstatement of business expenses, personal living expenses, and "[capital] and/or other personal expenditures" claimed as deductions including house payments, one-half the cost of a washing machine, and the cost of a file cabinet, an office chair, and two refrigerators, and (b) whether the Commissioner correctly determined depreciation on petitioners' residence used for business purposes, and depreciation on a file cabinet and office chair used in petitioners' business. Respondent's contention, which we sustain, is that the petitioners *40 have failed to introduce sufficient evidence to carry their burden of proving the Commissioner's determinations to be erroneous, and therefore the Commissioner's determinations must be approved. Welch v. Helvering, 290 U.S. 111; J. M. Lyon, 1 B.T.A. 378. Petitioners contend that the sum of $15,500 received from their employer in 1957 for salaries earned in the years 1954 and 1955 should be treated as taxable income in the years 1954 and 1955. Petitioners specifically request this Court to allow their claims for refund for these years. Section 1303[1] of the 1954 Code and the regulations [2] thereunder provide for a limitation on tax in the year in which back pay is received, and the definition of back pay, insofar as applicable here, is salary for prior years which would have been paid but for the intervention of bankruptcy or receivership of the employer, or a similar circumstance as defined in the regulations. Therefore, it is apparent that petitioners' request that the sum of $15,500 received in 1957 be treated as gross income in the years 1954 and 1955, and that this Court allow refunds on overassessments of tax for those years, resulting from overpayments *41 of withholding tax on the $15,500, is a form of relief not afforded by statute. We also note that this Court has no jurisdiction over petitioners' claims for refund for the years 1954 and 1955. Section 6214(b) of the Internal Revenue Code of 1954. Petitioners have failed to show that the amounts they received for services rendered in the years 1954 and 1955 are within the definition of back pay as provided in section 1303(b). Further, even if the amounts received qualified as back pay, petitioners have failed to prove that their tax liability for 1957 is greater than their tax would have been for the years 1954 and 1955 if the amounts earned in those years had been included in gross income when earned. Accordingly, we approve the respondent's determination that the receipt of $15,500 by petitioners from their employer in the year 1957 constituted taxable income in the year received. It follows that respondent correctly determined the medical expense deduction for 1957. *42 Petitioners contend that the automobile valued at $400 and cash in the amount of $10,000 received by them in lieu of salaries still owing from their employer were properly reported on their return as long-term capital gain. Their argument is that the employer "was in process of liquidation and the monies owed the petitioners were in excess of the monies paid." It is not necessary in disposing of this contention to do more than to note that section 331 of the Internal Revenue Code of 1954 provides that "[amounts] distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock," and "[amounts] distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock;" and that section 61 of the Internal Revenue Code of 1954 provides that "gross income means all income from whatever source derived," including "[compensation] for services, including fees, commissions, and similar items." In addition, the record in this case does not apprise us of the liquidation, if any, of petitioners' employer. Respondent's *43 determination with respect to this matter is therefore sustained. It is petitioners' contention that they are entitled to depreciation deductions on their residence used for business purposes in excess of the amount allowed by respondent. They claim that the amount of the deductions should be computed on the basis of their estimate of the replacement value of the residence which is $35,000 or $40,000. Pursuant to sections 167(f), [3]1011, 1012, and 1016 of the Internal Revenue Code of 1954, the basis for depreciation is the cost of the property adjusted for expenditures properly chargeable to the capital account. We have found as a fact that the cost of the property to petitioners was $18,750, that there is no evidence of record to establish the cost or time of improvements made to the house, and no evidence to overcome the Commissioner's determinations that $2,750 of such cost should be allocated to land, 10 percent of the cost of the building should be allocated to personal use, and that the building should be depreciated over a 40-year period. Accordingly, respondent's determinations of the amounts of depreciation allowable as deductions in the years 1958 *44 and 1959 are sustained. Petitioners have failed to offer any evidence to prove as erroneous respondent's determinations that petitioners are not entitled to deductions for books and travel expenses for the year 1957, that petitioners' net profit from business was understated in the year 1958, that for the year 1959 petitioners overstated business expenses, and that petitioners are not entitled to deductions for personal living expenses, house payments, one-half the cost of a washing machine, and the cost of two refrigerators, a file cabinet, and an office chair. No evidence has been offered to prove that respondent's allowance of depreciation on the latter two items used in petitioners' business was incorrect. We, therefore, sustain respondent's determinations with respect to these matters. Decision will be entered for the respondent. Footnotes
1. SEC. 1303. INCOME FROM BACK PAY. (a) Limitation on Tax. - If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate. (b) Definition of Back Pay. - For purposes of this section, the term "back pay" means amounts includible in gross income under this subtitle which are one of the following - (1) Remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed before the taxable year for his employer and which would have been paid before the taxable year except for the intervention of one of the following events: (A) bankruptcy or receivership of the employer; * * *
(D) any other event determined to be similar in nature under regulations prescribed by the Secretary or his delegate. * * *
* * *↩
2. SEC. 1.1303-1(b), INCOME TAX REGS. Income from back pay. (b) Definition of back pay. - (1) Remuneration delayed because of certain events. "Back pay" means remuneration including wages, salaries, pensions, retirement pay, and other similar compensation, received or accrued during the taxable year and includible in gross income by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year but for the intervention of any one of the following events: (i) Bankruptcy or receivership of the employer; * * *
(iv) Any other event determined to be similar in nature under this subparagraph. An event will be considered similar in nature to those events specified in subdivisions (i), (ii), and (iii) of this subparagraph only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. ↩
3. Redesignated section 167(g)↩ by section 13(c)(1), Revenue Act of 1962, 76 Stat. 960, 1034.